IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

T.L., by and through her father and
next friend, SHAUN LOWRY; G.L., by             No. 03:13-cv-01562-HZ
and through his father and next
friend SHAUN LOWRY; SHAUN LOWRY,
an individual; and ASHLEY LARSON,
an individual,

                                 OPINION & ORDER

                   Plaintiffs,

       v.

SHERWOOD CHARTER SCHOOL, an
Oregon public charter school, and
SHERWOOD CHARTER SCHOOL
BOARD,

                 Defendants.

Kevin C. Brague
KIVEL AND HOWARD, LLP
111 S.W. Fifth Avenue, Suite 1775
Portland, Oregon 97204

      Attorney for Plaintiff

/ / /

1 - OPINION & ORDER

Steven A. Kraemer
Mark C. Sherman
HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205

     Attorneys for Defendant

HERNANDEZ, District Judge:

     In this civil rights action, Plaintiffs challenge actions taken by Defendants Sherwood

Charter School and the Sherwood Charter School Board against Plaintiffs T.L. and G.L., both

former students at the school.  T.L and G.L appear through their next friend and father Shaun

Lowry.  Lowry and Ashley Larson, identified as T.L.'s and G.L's caregiver, bring additional

claims against Defendants for actions taken against Lowry and Larson directly.

     Defendants move to dismiss certain claims or portions of claims for failure to state a

claim.  I grant the motion as to the constitutional due process claim brought by Lowry and

Larson, Lowry's intentional infliction of emotional distress claim, the breach of contract claim,

and Lowry's, Larson's, and G.L.'s negligence claims.  I otherwise deny the motion.

BACKGROUND

     T.L. was a student at Sherwood Charter School (SCS).  Plaintiffs contend that beginning

in September 2011, Defendants had knowledge of a specific student attending SCS, referred to in

the Second Amended Complaint by the initials "K.L.," who had severe behavioral and

interpersonal boundary issues as well as a history of aggressive behavior.  Sec. Am. Compl. at ¶

8.  Beginning in November 2011, Lowry communicated to SCS and its employees safety

concerns about specific incidents occurring at SCS involving K.L.  Id. at ¶ 9.  Plaintiffs allege

that Defendants retaliated against them in at least twelve ways after Lowry made these

2 - OPINION & ORDER

complaints. <u>Id.</u> at ¶ 10.  On December 19, 2012, Lowry submitted a written complaint to SCS regarding the alleged actions by Defendants and requested that a formal investigation be conducted by an independent third party. <u>Id.</u> at ¶ 11.  Plaintiffs allege that SCS refused to follow policy and allow for a proper investigation and further failed to complete any formal or proper investigation in violation of the policies of SCS, Sherwood School District 88J, and the Oregon Department of Education. <u>Id.</u>

Plaintiffs contend that as a result of Lowry's requests and his written complaint, SCS teachers either disciplined or threatened to discipline G.L. <u>Id.</u> at ¶ 12.  Plaintiffs contend that the threat of punishment was made to drive Lowry and his children from the school and that these actions deprived T.L. and G.L of an education at SCS. <u>Id.</u>  Plaintiffs allege further that as a result of Lowry's advocacy and complaints, SCS suspended T.L, and banned Lowry and Larson from SCS. <u>Id.</u> at ¶ 13.  Plaintiffs allege that due to the hostility of SCS toward Plaintiffs, T.L. and G.L. were removed from SCS which deprived them of the enhanced curriculum at SCS, relationships with other students and faculty, eighth grade graduation, and all of the other aspects of the SCS educational environment. <u>Id.</u> at ¶ 15.  T.L suffered emotional distress requiring counseling. <u>Id.</u>  G.L. was removed from public school entirely and now receives an education from a privately paid tutor at personal expense to Lowry. <u>Id.</u>  Other relevant facts are noted below.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." <u>Am.</u>

3 - OPINION & ORDER

Family Ass'n, Inc. v. City & Cnty. of S.F., 277 F.3d 1114, 1120 (9th Cir. 2002).  However, the court need not accept conclusory allegations as truthful.  See Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations") (internal quotation marks, citations, and alterations omitted).

A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]"  Id. (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Additionally, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.  A complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct[.]"  Id. at 679.

DISCUSSION

4 - OPINION & ORDER

Plaintiffs bring the following claims:  (1)  a claim by T.L. for peer on peer sexual harassment under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"); (2) a Title IX retaliation claim brought by all Plaintiffs; (3) a 42 U.S.C. § 1983 claim brought by T.L., Lowry, and Larson alleging violations of their Fourteenth Amendment procedural and substantive due process rights; (4) a claim by G.L. under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); (5) a claim by G.L. under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (ADA); (6) an intentional infliction of emotional distress (IIED) claim brought by T.L. and Lowry; (7) a breach of contract claim by Lowry; and (8) a negligence claim brought by all Plaintiffs.  Sec. Am. Compl. at ¶¶ 18-67.

Defendants move to dismiss the following claims, or portions of claims:  (1) the section 1983 due process claim as to Lowry and Larson; (2) the Rehabilitation Act and ADA claims to the extent they are based on alleged discriminatory actions occurring before October 11, 2012; (3) the IIED claim; (4) the breach of contract claim; and (5) the negligence claim.  I address the arguments in turn.

I.  Section 1983 Claim

Plaintiffs contend that in retaliation for Lowry's complaints to SCS, Defendants prohibited Larson and Lowry from the SCS campus (including entering buildings, classrooms, school activities, and field trips).  Sec. Am. Compl. at ¶¶ 10a, b.  Plaintiffs allege that SCS had an unofficial policy, custom, or  practice of barring parents, including Lowry and Larson, and other agents from coming onto the property because they were critical or negative of SCS's operations or decisions.  Id. at ¶ 33.  Plaintiffs contend that as a result of these unofficial policies, customs, or practices, they were denied the basic protections of the Fourteenth Amendment

5 - OPINION & ORDER

including notice and hearing before being denied their liberty and property interest in a public school education.  Id. at ¶ 34.

Defendants argue that parents have no constitutional right to be on school premises. Accordingly, they move to dismiss the claim to the extent it is brought by Larson and Lowry. Moreover, without a substantive constitutional right at issue, there can be no procedural due process violation.  In response to the motion, Larson withdraws her section 1983 claim, acknowledging that because she is not related by blood or marriage to T.L or G.L, she does not enjoy the same due process rights as a natural parent.  Pls.' Resp. Mem. at 2.  Lowry, however, argues that as a parent, he enjoys a liberty interest in the care and management of his children.

Parents have a fundamental liberty interest in the care, custody, and control of their children, including the right to control their children's education.  Troxel v. Granville, 530 U.S. 57, 65-66 (2000) (plurality opinion) (noting that the liberty interest of parents "in the care, custody, and control of their children" "is perhaps the oldest of the fundamental liberty interests recognized by this Court" and that the liberty "protected by the Due Process Clause includes the right of parents to establish a home and bring up children and to control the education of their own.") (internal quotation marks omitted).

However, no court has extended a parent's fundamental liberty interest in the care of his or her children to a parental right to physically access a child's school.  As the Western District of Michigan explained, "[w]hile Troxel does mention that parents have the right to direct and control the education of their children . . ., nothing in that decision suggests that it includes the right to go onto school property, even if doing so is necessary to participate in the child's education."  Mejia v. Holt Pub. Schs., No. 5:01-CV-116, 2002 WL 1492205, at *5-6 (W.D.

6 - OPINION & ORDER

Mich. Mar. 12, 2002); see also Lovern v. Edwards, 190 F.3d 648, 655-56 (4th Cir. 1999)

(parent's claim that parent's constitutional parental rights were violated by school superintendent's

barring parent from school premises held "plainly insubstantial and entirely frivolous"); Justice v.

Farley, No. 5:11-CV-99-BR, 2012 WL 83945, at *3 (E.D.N.C. Jan. 11, 2012) ("While parents

have a general constitutional right to direct their children's education without unreasonable

interference by the states, this right is limited in scope and does not include the unfettered right to

access school premises"; further noting that "[m]any courts have held that parents do not have a

constitutional right to be on school premises" and citing cases) (citation omitted); appeal

dismissed, 470 F. App'x 136 (4th Cir. 2012); Porter v. Duval Cnty. Sch. Bd., No. 3:09-CV-285-J-

32MCR, 2010 WL 1252177, at *7 (M.D. Fla. Mar. 26, 2010) ("Parents have no constitutional

right to be on school premises"), aff'd, 406 F. App'x 460 (11th Cir. 2010); Meadows v. Braxdale,

No. A-08-CA-819-SS, 2010 WL 55974, at *5 (W.D. Tex. Jan. 4, 2010) ("although parents have a

constitutional liberty interest 'in the care, custody, and control of their children,' Troxel[ ], 530

U.S. [at] 65-66 [], neither the Supreme Court nor any other court has ever held the Constitution

establishes a parental right to access a child's classroom or other school areas while school is in

progress and other students are present").

     Plaintiffs argue that the cases relied on by Defendants are distinguishable because they

primarily involve (1) parents who were critical of the school administration and then interfered

with school operations, (2) coaching, or (3) contacting employees at home.  According to

Plaintiffs, Lowry wanted to protect his daughter from sexual harassment and did not interfere

with the education process or the classroom.

     Not all of the relevant cases involve an abusive or interfering parent.  For example, in

Ryans v. Gresham, 6 F. Supp. 2d 595 (E.D. Tex. 1998), the parent observed the child's class because she was concerned that her son was a victim of race discrimination. After one hour, the teacher requested that she leave. The parent refused and was arrested. The trespass charge was later dropped but the parents sued, contending that their constitutional rights were violated. As described by the court, the parents' claim "aims to establish that their constitutional right to direct their son's education imposes upon schools and school officials an obligation to permit them to attend his classes." Id. at 602. The court rejected the argument, explaining that "[a]n exhaustive review of the case law pertaining to the constitutional right of parents to direct the education of their children discloses no holding even remotely suggesting that this guarantee includes a right to access to the classes in which one's child participates." Id. at 601.

In Meadows, the parent was prevented from attending certain school activities and from entering the secure areas of the school because she refused to produce her driver's license in compliance with a school policy. She argued that cases concluding that parents do not possess a constitutional right to access school property were distinguishable because she had committed no illegal act, was not disruptive, violated no rule or policy, nor acted offensively. 2010 WL 55974, at *6. The court noted that the plaintiff had in fact violated a policy but also explained that although the facts of some of the cases "may involve some level of disruption or disturbance," the holdings of those cases did not depend on those facts. Id. That is, the cases did not find "that when a parent has committed some bad act there is no constitutional right to access; rather, they [] find there is no constitutional right to access period." Id.; see also Frost v. Hawkins Cnty. Bd. of Educ., 851 F.2d 822, 826-27 (6th Cir. 1988) (parent who had entered school to provide alternative reading curriculum to her child and who was arrested for trespass after continuing

8 - OPINION & ORDER

practice even though new policy prohibited it, had no constitutional claim).

Lowry possesses no substantive due process right to access school property, regardless of the purpose of his intended visit.  Furthermore, because there is no constitutional right to be on school property, no procedural due process protections are required before prohibiting a parent's access.  E.g., Justice, 2012 WL 83945, at *3 (school not required to provide notice or hearing before banning parent from entering school property when the ban did not deprive the parent of a life, liberty, or property interest); Mejia, 2002 WL 1492205, at *7 (procedural due process does not require school district to provide parents with notice and hearing before denying them access to school property).  I grant Defendants' motion as to the substantive and procedural due process claims as to Lowry and Larson.

II.  Section 504 Rehabilitation Act and ADA Claims

Plaintiffs assert that G.L has a disability and that SCS violated both the Rehabilitation Act and the ADA by failing to provide him with reasonable accommodation.  Sec. Am. Compl. at ¶¶ 38-43 (Rehabilitation Act Claim); Id. at ¶¶ 44-49 (ADA Claim).

Defendants argue that because a one-year statute of limitations applies to these claims, the claims must be dismissed to the extent they are based on events occurring before October 11, 2012.  The parties agree that neither the Rehabilitation Act nor the ADA has its own statute of limitations.  Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1137 n.2 (9th Cir. 2002) (ADA contains no statute of limitations); see Douglas v. Cal. Dep't of Youth Auth., 271 F.3d 812, 823 n.11 (9th Cir.) (statute of limitations for Rehabilitation Act claim provided by analogous state law because Rehabilitation Act does not contain its own), amended, 271 F.3d 910 (9th Cir. 2001).  The parties also agree that when a federal statute lacks its own statute of

limitations, courts apply the statute of limitations of the most analogous state law.  <u>Wilson v. Garcia</u>, 471 U.S. 261, 266-71 (1985) (addressing the issue in the context of a section 1983 claim).  Where the parties part ways, however, is in identifying the Oregon law most analogous to the ADA and the Rehabilitation Act.

Defendants argue that either one of two Oregon disability discrimination statutes is the most analogous state law and that a one-year statute of limitations applies to those statutes.  Plaintiffs contend that the most analogous state law is a personal injury claim which carries a two-year statute of limitations in Oregon.  I agree with Plaintiffs that a two-year statute of limitations applies, but for a different reason.  As explained herein, I agree with Defendants that Oregon Revised Statute § (O.R.S.) 659A.142 is the most analogous Oregon statute.  However, because that statute has a two-year statute of limitations, I deny Defendants' motion.

Plaintiffs contend that Oregon's two-year statute of limitations for personal injury actions applies because given that the nature of the ADA and Rehabilitation Act claims are civil rights claims, they are most analogous to a personal injury claim.  Plaintiffs' argument has been adopted by a number of courts, including decisions from the District of Oregon.  <u>Plasencia v. Carnevale</u>, No. 03:06-cv-01426-AC, 2008 WL 2354423, at *2  (D. Or. June 6, 2008) (Oregon's two-year statute of limitations for personal injury actions applies to ADA and Rehabilitation Act claims); <u>see also</u> <u>Thunderbird v. Or. Dep't of Corr.</u>, No. 03:08-cv-01404-PK, 2011 WL 2971798, at *3 (D. Or. June 28, 2011) (citing <u>Plasencia</u> in applying two-year personal injury statute of limitations to ADA and Rehabilitation Act claims), adopted by J. Haggerty (D. Or. July 20, 2011); <u>Macy v. SAIF Corp.</u>, No. 03:99-cv-00309-ST, 2000 WL 277164, at 5 (D. Or. Feb. 10, 2000) (noting that the majority of courts characterize an ADA claim as a state personal injury action and apply the

10 - OPINION & ORDER

state personal injury statute of limitations, which in Oregon is two years; citing to decisions from

the Fifth, Seventh, and Eleventh Circuits), adopted by J. Panner (D. Or. Mar. 14, 2000).

While the Ninth Circuit has discussed the issue, it has not expressly held in a published

opinion that for purposes of supplying a statute of limitations to an ADA or Rehabilitation Act

claim, a personal injury claim is more analogous than a state statutory disability discrimination

claim.  In Douglas, the parties agreed that California's one-year statute of limitations for personal

injuries governed Rehabilitation Act claims.  271 F.3d at 823 n.11.  In Daviton v.

Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1135-36 (9th Cir. 2001), the court noted that

previous cases had held that the Rehabilitation Act was analogous to section 1983 civil rights

claims which under Wilson, used the state's personal injury statute of limitations and thus, it

indicated that a one-year California statute of limitations for personal injury claims applied to the

Rehabilitation Act claim.  But, the court stated that because the plaintiff conceded that the one-

year statute applied, it did not need to reach the issue.  Id. at 1136; see also Pickern, 293 F.3d at

1137 n.2 (parties agreed that one-year personal injury statute of limitations applied to ADA

claim).

Pieri v. Dammasch State Hospital is an unpublished Ninth Circuit case which applied

Oregon's two-year general personal injury statute to the plaintiff's section 1983 and

Rehabilitation Act claims.  No. 94-35970, 1996 WL 73379, at *2 (9th Cir. Feb. 20, 1996).  The

court engaged in little discussion of the issue, noting only that a 1987 case had characterized the

Rehabilitation Act as a civil rights statute, closely analogous to section 1983, which in turn under

Wilson, was analogous to a personal injury action.  Id. (citing Alexopulos v. S.F. Unified Sch.

Dist., 817 F.2d 551, 554 (9th Cir. 1987)).

11 - OPINION & ORDER

In a 1999 decision, the Northern District of California was confronted with the same question presented here: in determining the applicable statute of limitations for an ADA or Rehabilitation Act claim, is the most analogous state statute the state's general personal injury statute or a state disability discrimination statute?  Kramer v. Regents of the Univ. of Cal., 81 F. Supp. 2d 972, 974 (N.D. Cal. 1999).  The court noted that circuit courts had reached differing conclusions, with most adopting the state statute of limitations for personal injury actions by analogizing ADA or Rehabilitation Act claims to section 1983 claims.  Id. The court further noted that other courts had looked first to state discrimination statutes, but had applied the state personal injury statute of limitation if a state discrimination statute did not exist.  Id. at 974-75. The Kramer court then discussed the one circuit court case in which a state statute prohibited discrimination based on disability and included its own statute of limitations.  Id. at 975.  That court applied the state disability discrimination statute's limitations period.  Id. (citing Wolsky v. Med. Coll. of Hampton Roads, 1 F.3d 222, 224 (4th Cir. 1993)).

The Kramer court noted that the Ninth Circuit had not decided the issue.  However, it remarked that in Alexopulos the Ninth Circuit had noted that Section 504 of the Rehabilitation Act is a civil rights statute closely analogous to section 1983.  Id. (citing Alexopulos, 817 F.2d at 554).  Finding no controlling Ninth Circuit law, the Kramer court cited to several decisions from its own court holding that the general personal injury statute of limitations applied to federal disability discrimination claims.  Id. at 975-76 (citing cases).  One case reached the opposite conclusion, however, and applied the statute of limitations for a disability discrimination claim. Id. at 976 (citing Campos v. S.F. State Univ., No. C 97-2326 at n.1 (N.D. Cal. Jan. 29, 1999)).

The Kramer court's review of the cases from the Northern District of California led the

court to remark that other than <u>Campos</u>, none of the cases considering the issue had been presented with the same argument raised in <u>Kramer</u>. <u>Id.</u> at 976. Instead, "[m]ost of those opinions adopt the [general personal injury] statute of limitations period with little or no discussion, by analogizing ADA or Rehab Act claims to § 1983 claims." <u>Id.</u> None had considered whether the statute of limitations applicable to the state disability discrimination statute should apply and none had discussed the reasoning of the Fourth Circuit decision in <u>Wolsky</u> which applied the state disability discrimination statute's limitations period over the limitations period for more general personal injury claims. <u>Id.</u>

The <u>Kramer</u> court followed the reasoning of <u>Wolsky</u> in concluding that the state disability discrimination statute was the most analogous statute to the ADA and Rehabilitation Act and that its statute of limitations, not the statute for more general personal injury claims, applied. <u>Id.</u> at 976-77. The <u>Kramer</u> court explained that under <u>Wilson</u>, courts are required to determine the statute of limitations by looking at the state law <u>most</u> analogous to the ADA and the Rehabilitation Act. <u>Id.</u> "Simply concluding that the ADA is a civil right, and that therefore the statute of limitations applicable to § 1983 should apply, seems insufficient." <u>Id.</u> Continuing, the <u>Kramer</u> court discussed that in <u>Wilson</u>, the Supreme Court chose a general personal injury statute of limitations rather than a more specific one because of the breadth of diverse "topics and subtopics" that are encompassed by section 1983 claims. <u>Id.</u> In contrast, "the more specific nature of [the] ADA allows for a direct relationship to state law prohibiting disability discrimination." <u>Id.</u>

The reasoning of <u>Kramer</u> is persuasive. As in <u>Kramer</u>, the Ninth Circuit has still not expressly held in a published opinion and in a case where the issue was clearly presented, that the

13 - OPINION & ORDER

most analogous claim to an ADA or Rehabilitation Act claim is a general personal injury claim instead of a state disability discrimination claim. And, similarly to Kramer, none of the cases from the District of Oregon have analyzed the issue in any depth; instead, like the district court cases Kramer cites, the Oregon cases adopt Oregon's two-year statute of limitations for general personal injury claims with little or no discussion and by citing to the rule for section 1983 claims. Or, the court avoided the issue because it was not determinative or was not in dispute. Repp v. Or. Health Sci. Univ., 972 F. Supp. 546, 547-48 (D. Or. 1997) (court did not need to decide if one-year statute of limitations for state statutory disability discrimination claims or two-year statute of limitations for personal injury claims applied to plaintiff's ADA and Rehabilitation Act claims because claims were time-barred under either statute of limitations); Olson v. Or. Univ. Sys., No. 03:09-cv-00167-MO, 2009 WL 1270293, at *3 (D. Or. May 6, 2009) (parties agreed that two-year statute of limitations applied to the ADA and Rehabilitation Act claims).

For the reasons thoroughly explained by Kramer, I reject Plaintiffs' argument that the most analogous state law to the ADA or Rehabilitation Act is a personal injury claim. Rather, Oregon's disability discrimination statutes found at O.R.S. 659A.103 to O.R.S. 659A.145 contain the most analogous state law.

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . . " 29 U.S.C. § 794. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of

14 - OPINION & ORDER

a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Under O.R.S. 659A.103, Oregon has expressly adopted a policy to "guarantee individuals the fullest possible participation in the social and economic life of the state, . . . to participate in and receive the benefits of the services, programs and activities of state government, . . . without discrimination on the basis of disability." The statutory scheme is entitled "Unlawful Discrimination Against Persons with Disabilities," and like the ADA and the Rehabilitation Act, it has broad application to a variety of entities, both public and private. Additionally, O.R.S. 659A.103 to O.R.S. 659A.145 are to be "construed to the extent possible in a manner that is consistent with any similar provisions of the [ADA]." O.R.S. 659A.139. Finally, the law includes a provision prohibiting state government from denying the benefits of its services and programs to an individual because of that person's disability. O.R.S. 659A.142. Given that the claims in this case contend that a public entity deprived G.L. of services or programs because of his disability, O.R.S. 659A.142 is the most analogous state statute.[1]

While I accept Defendants' argument to this point, I reject Defendants' contention that claims brought under O.R.S. 659A.142 are subject to a one-year statute of limitations. The statutes governing civil actions for unlawful discrimination are found at O.R.S. 659A.870 to O.R.S. 659A.890. There, the Oregon Legislature has provided, in one place, the laws governing

---

[1] In their Reply Memorandum, Defendants argue for the first time that O.R.S. 659.850 is an alternative "most analogous statute" because it addresses discrimination in education. If the ADA and the Rehabilitation Act were also so narrowly focused, Defendant's argument would have more appeal. Because the ADA and the Rehabilitation Acts apply more broadly to a variety of public and private sector entities, however, I find Oregon's disability discrimination statutes in Chapter 659A to be the "most" analogous statute. Furthermore, O.R.S. 659.850 addresses several types of discrimination in education while the ADA and the Rehabilitation Act are limited to discrimination based on disability, similar to Oregon's disability discrimination statutes.

the filing of discrimination claims, regardless of the type of discrimination at issue.  Under

O.R.S. 659A.885, a plaintiff bringing an action for disability discrimination under any of the

provisions in O.R.S. 659A.103 to O.R.S. 659A.145, is entitled to equitable relief, compensatory

damages, punitive damages, and a jury trial.  O.R.S. 659A.885(1), (2), (3).  Time limitations for

discrimination actions are found in O.R.S. 659A.875.  Several subsections of that statute govern

claims brought under specific statutes not at issue here.  O.R.S. 659A.875(2) - (6) (addressing

claims or actions brought under O.R.S. 659A.820, O.R.S. 659A.145, O.R.S. 659A.421, O.R.S.

659A.840, O.R.S. 659A.403, O.R.S. 659A.406).

Subsection (1), the part of O.R.S. 659A.875 Defendants contend sets forth the controlling

a one-year statute of limitations, provides, in pertinent part, that "a civil action under ORS

659A.885 alleging an unlawful employment practice must be commenced within one year after

the occurrence of the unlawful employment practice . . . ."  O.R.S. 659A.875(1).  While an action

alleging a violation of O.R.S. 659A.142 is, by virtue of being part of O.R.S. 659A.103 to O.R.S.

659A.145, a civil action under O.R.S. 659A.885, it is not a "civil action under ORS 659A.885

alleging an unlawful employment practice[.]  O.R.S. 659A.875(1) (emphasis added).   By its own

language, O.R.S. 659A.875(1) provides a one-year statute of limitation actions only to a

particular type of disability discrimination claim - one based on an alleged unlawful employment

practice.  It does not address the time limitation for other "unlawful practices" proscribed by the

Oregon Legislature.

Courts have a "'duty to give effect, if possible, to every clause and word of a statute.'"

United States v. Caceres-Olla, 738 F.3d 1051, 1056 (9th Cir. 2013) (quoting Duncan v. Walker,

533 U.S. 167, 174 (2001)); see also State ex rel. Dep't of Transp. v. Stallcup, 341 Or. 93, 101,

16 - OPINION & ORDER

138 P.3d 9, 14 (2006) (court's duty is to give effect to every provision of a statute).   As a result,

giving effect to the legislature's inclusion of the adjective "employment" in describing the

unlawful practices to which the one-year limitation applies, and its inclusion of the word in

describing the date from which the one-year period commences, O.R.S. 659A.875(1) does not

apply to claims brought under O.R.S. 659A.142.

      Instead, under O.R.S. 12.110, a two-year statute of limitations applies to actions for "any

injury to the person or rights of another, not arising on contract, and not especially enumerated in

this chapter[.]"   O.R.S. 12.110(1).   O.R.S. Chapter 12 does not contain a statute of limitations

for disability discrimination actions, or any other type of discrimination action.   Thus, O.R.S.

12.110(1) applies and a two-year statute of limitations applies.

      In summary, while I agree with Defendants that O.R.S. 659A.142 is the most analogous

state statute to the ADA and Rehabilitation Act claims, I disagree that the one-year statute of

limitations in O.R.S. 659A.875(1) applies here because this is not an employment action.   As a

result, I deny Defendants' motion directed to the ADA and Rehabilitation Act claims.

III.  The IIED Claims

      In support of their IIED claims, Lowry and T.L. both allege that they have a special

relationship with SCS.   Sec. Am. Compl. at ¶ 51.   They also contend that SCS's conduct toward

them was extreme and outrageous, constituting an extraordinary transgression of the bounds of

socially tolerable conduct.   Id. at ¶ 52.   Specifically, they identify the following actions:

      (1) failing to follow the SCS Safety Plan which forced T.L. to interact with student K.L.

who was known by SCS to have severe behavioral and interpersonal boundary issues and a

history of aggressive behavior;

17 - OPINION & ORDER

(2) forcing T.L. to sit next to K.L. despite the fact that a safety plan was in place

prohibiting that seating arrangement and despite that Lowry and T.L. had repeatedly requested

that T.L. not be seated next to K.L.;

(3) confiscating, copying, and distributing T.L.'s personal journal she maintained at home;

(4) suspending T.L. from SCS without due process and in violation of SCS's, Sherwood

School District 88J's, and the Oregon Department of Education's written policies and procedures;

(5) suspending T.L. from SCS without just cause and in retaliation for the filing of formal

complaints against Defendants;

(6) accusing T.L. of violating school policy by using her cell phone to call Lowry while

she was emotionally distraught and seeking privacy in the girls' bathroom after being

inappropriately reprimanded and threatened by SCS employees;

(7) continuing threats of disciplinary action against T.L. including further suspension; and

(8) threatening to discipline G.L.  Id. at ¶ 52.

Lowry and T.L. also allege that SCS acted intentionally and knowingly or in reckless

disregard of whether their acts would cause T.L. to suffer emotional distress.  Id. at ¶ 53.

In addition, Plaintiffs incorporate by reference prior paragraphs 8-49, including that (1)

Defendants knew that K.L. had verbally and physically threatened other students on multiple

occasions, including, but not limited to threatening sexual assault of other students and assaulting

a student by stabbing him with a pencil; (2) Defendants prohibited Lowry from the SCS campus

and published false statements to third parties that Lowry was hostile while interacting with SCS

staff, that he bullied and taunted staff, and that he engaged in "cyber bullying" of SCS staff; and

(3) Defendants sought to intimidate Lowry at an SCS board meeting by having a Sherwood

18 - OPINION & ORDER

Police Officer come to the meeting to watch Lowry and "sustain[ing] a campaign of retaliation against Lowry." Id. at ¶¶ 8, 10.

Defendants move to dismiss the IIED claim because (1) Lowry failed to raise the claim in a tort claim notice pursuant to the Oregon Tort Claims Act, O.R.S. §§ 30.260 - 30.300 (OTCA); (2) both Lowry and T.L. fail to state a claim. Because I agree with Defendants that Lowry fails to state an IIED claim, I do not address the tort claim notice argument. However, I agree with Plaintiffs that T.L. states an IIED claim.

A. Failure to State a Claim - Lowry

Defendants argue that the IIED claim brought by Lowry fails to state a claim because as a matter of law, the facts pleaded in support of the claim do not demonstrate sufficiently outrageous conduct. To state an IIED claim, Plaintiffs must show that Defendants intended to inflict severe emotional distress, that Defendants' acts were the cause of Plaintiffs' severe emotional distress, and that Defendants' acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. McGanty v. Staudenraus, 321 Or. 532, 563, 901 P.2d 841, 849 (1995). Conduct that is merely "rude, boorish, tyrannical, churlish, and mean" does not support an IIED claim. Patton v. J.C. Penney Co., 301 Or. 117, 124, 719 P.2d 854, 858 (1986). "[T]he tort does not provide recovery for the kind of temporary annoyance or injured feelings that can result from friction and rudeness among people in day-to-day life even when the intentional conduct causing plaintiff's distress otherwise qualifies for liability." Hall v. The May Dep't Stores Co., 292 Or. 131, 135, 637 P.2d 126, 129 (1981). Whether the alleged conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law for the court. Harris v. Pameco Corp., 170 Or. App. 164, 171, 12 P.3d 524, 529 (2000).

In a 2008 case, the Oregon Court of Appeals explained the following parameters of the

tort:

> A trial court plays a gatekeeper role in evaluating the viability of an IIED
> claim by assessing the allegedly tortious conduct to determine whether it goes
> beyond the farthest reaches of socially tolerable behavior and creates a jury
> question on liability. . . .
>
> . . .
>
> The classification of conduct as "extreme and outrageous" depends on both the
> character and degree of the conduct. As explained in the *Restatement* [*(Second) of
> Torts*] at § 46 comment d [1965]:
>
>> "Liability has been found only where the conduct has been so outrageous
>> in character, and so extreme in degree, as to go beyond all possible bounds
>> of decency, and to be regarded as atrocious, and utterly intolerable in a
>> civilized community."
>
> Whether conduct is an extraordinary transgression is a fact-specific
> inquiry, to be considered on a case-by-case basis, based on the totality of the
> circumstances.  We consider whether the offensiveness of the conduct exceeds
> any reasonable limit of social toleration, which is a judgment of social standards
> rather than of specific occurrences.

House v. Hicks, 218 Or. App. 348, 358-59, 179 P.3d 730, 736 (2008) (internal quotation marks

and citations omitted).   Relevant contextual factors include whether the parties are in a "special

relationship," whether the alleged "conduct was undertaken with an ulterior motive or to take

advantage of an unusually vulnerable individual," and the "setting in which the conduct occurs,

for example, whether it occurred in a public venue or in an employment context[.]"  Id. at 360,

179 P.3d at 737.

Plaintiffs allege that Lowry and Defendants are in a special relationship based upon SCS

accepting Lowry's admission application on behalf of T.L.  Sec. Am. Compl. at ¶ 51.  Defendants

argue that Oregon courts have not recognized a special relationship between a public school and

20 - OPINION & ORDER

a student's parent.  Absent a special relationship, Defendants contend Lowry cannot state an IIED claim.

Defendants are correct that no Oregon case has held that a special relationship exists between a public school and a public school student him- or herself, much less between the parent of the student and the school.  In Doe ex rel. Farley, Piazza & Assocs. v. Gladstone Sch. Dist., No. 03:10-cv-01172-JE, 2012 WL 2049173, at *13 (D. Or. June 6, 2012), Judge Jelderks rejected the plaintiff's argument that the plaintiff and her public school enjoyed a  "special relationship" because of state law mandating school attendance and because of the defendants' *in loco parentis* status during the school day.  Judge Jelderks distinguished Shin v. Sunriver Preparatory Sch., Inc., 199 Or. App. 352, 111 P.3d 762 (2005), which found a special relationship between a private boarding school and a student under very specific circumstances.

Although Shin indicates that the determination of a special relationship is "driven by the facts," id. at 366, 111 P.3d at 770, I conclude that as a matter of law, Oregon courts have not, and would not, recognize a special relationship between a public charter school and a student's parent.  I further agree with Defendants that the alleged conduct is not sufficiently outrageous as a matter of law to support Lowry's IIED claim.

Lowry contends that SCS (1) prohibited him from the school campus, (2) published statements to third parties that he was hostile and bullied staff and had engaged in "cyber bullying" of school staff, and (3) sought to intimidate him by having a police officer present at a school board meeting.  Considering all of the relevant contextual factors, the alleged conduct directed toward Lowry does not "exceed[] any reasonable limit of social toleration[.]"  As indicated above, the fact that the conduct may otherwise qualify for liability or is wrongful, rude,

or offensive, is not support for an IIED claim.  None of the acts are outrageous in the extreme, either considered singly or together.  As a result, I grant Defendants' motion to dismiss Lowry's IIED claim.

B.  Failure to State a Claim - T.L.

Defendants move to dismiss the IIED claim brought by T.L because it fails to state a claim.  Like the claim brought by Lowry, T.L. alleges that she and SCS are in a special relationship.  Sec. Am. Compl. at ¶ 51.  Defendants argue that T.L and SCS are not in a special relationship and that the alleged conduct is not sufficiently outrageous to support an IIED claim.  Although I agree with Defendants that the courts have not recognized a special relationship between a public school and a public school student, as noted above, determining whether a special relationship exists has been described as a "fact-driven process," Shin, 199 Or. App at 366, 111 P.3d at 770 ("[w]hether a relationship is special is driven by the facts"), making resolution of the issue inappropriate on a motion to dismiss for failure to state a claim.  This is an issue more properly resolved on summary judgment especially because SCS is alleged to be a public charter school and thus, it may or may not possess distinguishing facts beyond those seen in the typical public school - student relationship addressed in Gladstone School District and which are relevant to the special relationship determination.  Thus, at this point, I assume, without deciding, that there is a special relationship between T.L. and SCS.

Given the special relationship, the facts state an IIED claim as to T.L., especially when they are considered collectively.  Additionally, the allegation that Defendants confiscated, copied, and distributed T.L's personal journal targets acts which are outside of those typically made by school employees.  Thus, I deny the motion to dismiss T.L's IIED claim.

IV.  Breach of Contract Claim

Lowry brings a breach of contract claim alleging that SCS, by and through its catalogs, bulletins, parent and student handbooks, admissions application, brochures, and district board policies, contracted with Lowry to provide education services to T.L. and G.L. and which Lowry accepted and provided consideration for in the form of a payment of $275 per student per year. Sec. Am. Comp. at ¶ 57.  He alleges that he performed all conditions precedent and is not otherwise in breach of the contract with SCS.  Id. at ¶ 57.

Defendants move to dismiss Lowry's contract claim for failure to state a claim. Defendants argue that courts which have examined the issue have held that student handbooks do not create a contractual relationship between parents and students on the one hand and the public school district on the other.  They argue that such is the case here.  Additionally, they contend that because Oregon law prohibits a public charter school from requiring a payment of fees as a condition to admission, the claim fails for lack of consideration because whatever Lowry paid to the school was not for tuition.  Plaintiffs respond that caselaw supports a conclusion that the "basic relationship between a school and a student is contractual in nature." Pls' Resp. Mem. at 15.

Unfortunately for Plaintiffs, the cases they rely on all concern the relationship between a student and a private educational institution.  E.g., Bird v. Lewis & Clark Coll., 104 F. Supp. 2d 1271, 1276 (D. Or. 2000) ("The basic legal relation between a student and private university or College is contractual in nature.  The catalogs, bulletins, circulars, and regulations of the institution made available to the matriculant became a part of the contract.") (internal quotation marks omitted; emphasis added).  The cases that have considered the issue in the context of a

public school hold that a school handbook does not create a contractual relationship between a public school and its students.  E.g., Brodeur v. Claremont Sch. Dist., 626 F. Supp. 2d 195, 216-18 (D.N.H. 2009) (rejecting the argument that the public school's student handbook amounted to a contract between the school district and the student; discussing that the weight of authority holds that no contract arises between a public secondary or elementary school and its students as a result of its student handbook because the law of contracts, premised on the notion of enforcing a voluntary agreement, does not apply in the context of compulsory public school education); Higginbottom ex rel. Davis v. Keithley, 103 F. Supp. 2d 1075, 1080-81 (S.D. Ind. 1999) (unlike the university setting where students pay tuition, the relationship between elementary school students and a public school is not by its nature contractual because the compulsory nature of public education "militates against the importation of mutual assent and consideration into the public elementary school context");  Achman v. Chisago Lakes Indep. Sch. Dist. No. 2144, 45 F. Supp. 2d 664, 670 (D. Minn. 1999) (despite state's recognition that personnel handbooks may qualify as contracts in the employer-employee context, that state's law has never suggested that a student/school district relationship is contractual in nature and none of the required elements of a contract were present).

Plaintiffs allege that SCS is a public charter school.  Sec. Am. Compl. at ¶ 7.  The caselaw is clear that a contractual relationship is not found in the relationship between a public school and its students given the involuntary nature of attendance and the absence of consideration.  Despite this allegation in the Second Amended Complaint, at oral argument Plaintiffs' counsel contended that SCS is not a public school.  Moreover, he pointed to the allegation, noted above, regarding the $275 Lowry paid to the school as "consideration."  Even

24 - OPINION & ORDER

assuming for the purposes of this Opinion that SCS is materially distinct from a typical public

school, the above-recited cases indicate that a contractual relationship between a student and a

school, like any contractual relationship, must be based on consideration in support of the mutual

exchange of promises.  That means, in the school setting, the payment of tuition in exchange for

education services.  E.g., Bird, 104 F. Supp. 2d at 1276 (plaintiff alleged the payment of tuition,

expenses, and fees was the consideration for her study abroad program).

Defendants note that under O.R.S. 339.155(1), a public charter school may not require

payment of fees as a condition to admission to those pupils entitled under the law to free

admission, and that under O.R.S. 339.141, a public charter school may not charge tuition for

regular school programs, meaning the regular curriculum provided in the required session of the

school for grades one through twelve during the approximately nine months each year when the

school is normally in operation.  The SCS Student Handbook, attached as Exhibit A to the

Second Amended Complaint, makes clear that the $275 "Your Fair Share" fee Lowry alleges he

paid as consideration for the education services provided by SCS, is for "budgeted items the law

allows" under O.R.S. 339.141, 339.147, and 339.155, meaning only for programs or classes not

part of the regular school program such as traffic safety programs, musical instrument rentals,

field trips, and the like.  Ex. A to Sec. Am. Compl. at 34.  As such, Lowry's allegation that the

money he paid was consideration for education services fails as a matter of law.  Accordingly,

based on the relevant authority, I conclude that as a matter of law, there is no contractual

relationship between SCS and its students, or their parents.  I grant the motion to dismiss Lowry's

breach of contract claim.

V.  Negligence Claims

All Plaintiffs bring a negligence claim.  Sec. Am. Compl. at ¶¶ 63-67.  Plaintiffs allege that SCS owes a "special duty" to Plaintiffs not to discriminate or retaliate against a student, and not to create a hostile education environment.  Id. at ¶ 64.  Although Plaintiffs do not allege the source of the "special duty" in paragraph 64, they state in the next paragraph that "ORS 339.362(1) provides:  A school employee, student or volunteer may not engage in reprisal against any victim of, witness to or person with reliable information about an act of harassment, intimidation or bullying or an act of cyberbullying."  Id. at ¶ 65.  Plaintiffs then allege that SCS breached its "special duties" to Plaintiffs as previously alleged and "by failing to adhere to the law and its own policy in the performance of its official duties and by so doing, proximately and foreseeably caused Plaintiffs injuries, damages, and losses."  Id. at ¶ 66.  Plaintiffs allege that as a result of SCS's discrimination, they have suffered embarrassment, humiliation, anxiety, stress, emotional distress, and fear, causing them economic and noneconomic damages.  Id. at ¶ 67.

Defendants move to dismiss the negligence claims.  Defendants first argue that the negligence claims for G.L., Lowry, and Larson should be dismissed for failure to comply with the notice requirement of the OTCA.  Second, Defendants argue that the negligence claims by all four Plaintiffs should be dismissed for failure to state a claim.  At oral argument, Plaintiffs' counsel withdrew Larson's claim.  Therefore, I grant the motion as to Larson's negligence claim.  Additionally, because I agree with Defendants that Lowry fails to state a negligence claim, I discuss the tort claim notice argument only with respect to G.L.'s claim.

A.  OTCA Notice Requirements

Under the OTCA, a notice of claim under O.R.S. 30.275 is a prerequisite to filing an action against a public body.  O.R.S. 30.275(1); Brinkley v. Or. Health Sci. Univ., 94 Or. App.

531, 537, 766 P.2d 1045, 1049 (1988) ("pleading and proof of notice sufficient to satisfy the requirements of ORS 30.275 are a mandatory requirement under the OTCA") (internal quotation marks omitted).  Notice is required within 180 days of the alleged loss or injury and is satisfied by formal or actual notice as specified in the statute.  O.R.S. 30.275(1).  Formal notice is a written communication containing:  (1) a statement that a claim for damages is or will be asserted against the public body; (2) a description of the time, place, and circumstances giving rise to the claim, so far as known to the claimant; and (3) the name of the claimant and the mailing address to which correspondence concerning the claim may be sent.  O.R.S. 30.275(4).  Formal notice must be by mail or personal delivery and to the person(s) designated in the statute.  O.R.S. 30.275(5).

On December 28, 2012, Plaintiffs' former counsel sent a formal tort claim notice letter pursuant to O.R.S. 30.275(1) to SCS.  Ex. 1 to Am. Notice of Removal at 15-18.[2]  The tort claim notice states that it was regarding "Shaun Lowry et al. vs. Sherwood Charter School, Sherwood Charter School Board of Directors," and two other individuals[3], and that an action was going to

---

[2]  The letter is an exhibit to a motion to dismiss Defendants filed against the Complaint when the case was pending in Washington County Circuit Court.  Ex. 4 to Am. Notice of Removal.  In Defendants' Memorandum in Support of their pending Motion to Dismiss before this Court, Defendants request that I take judicial notice of the document.  Plaintiffs make no objection.  I grant the request.  Fed. R. Evid. 201.  Moreover, Plaintiffs specifically plead compliance with the OTCA by serving Defendants with a tort claim notice on December 28, 2012 which I presume is the same December 28, 2012 letter Defendants request that I judicially notice.  Sec. Am. Compl. at ¶ 17.  Because it is incorporated by reference into the Second Amended Complaint, the document's authenticity is not in question, and there are no disputed issues as to the document's relevance, it is appropriate to consider it on a motion to dismiss.  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

[3]  These individuals, Joy Raboli and Jasmine Jones, were named in the Complaint that was eventually filed in Washington County but judgment in favor of these Defendants was entered by the Washington County Circuit Court before the case was removed to this Court.  Exs.

be filed in Washington County Circuit Court but had not been filed yet.  Id.  The tort claim notice letter begins as follows:  "Please be advised that this office represents the interests of Mr. Shaun Lowry and the Lowry family.  This letter is formal notice of Mr. Lowry's intent to file a formal lawsuit seeking injunctive relief and monetary damages based on the above referenced parties' inappropriate and retaliatory actions and failures to act both collectively and individually."  Id.  The letter then goes on to address T.L.'s problems "with a particular student" at SCS including an incident on December 5, 2012 when T.L. and two fellow students were verbally accosted by the student and his mother.  Id.  Plaintiffs noted that the school took no action after being advised of this incident and thereafter, "SCS's support of [T.L.] rapidly declined resulting in the school excluding both Mr. Lowry and Ms. Larson from school campus and ultimately, without following the school's procedure and without explanation, suspended [T.L.] from school."  Id.

The letter states that pursuant to O.R.S. 30.275, "formal notice of Mr. Lowry['s] inten[t] on pursuing the following allegations is hereby given[.]"  It then lists fourteen separate allegations.  Id.  Many of the allegations concern acts directed at T.L.  Some address acts or omissions directed at Lowry.  Id.  The letter concludes with the statement that if an immediate response and formal agreement is not adequately implemented regarding the issues raised in the letter, "Mr. Lowry, on behalf of his family will have no alternative but to pursue a lawsuit against the above referenced SCS employees and agents seeking both injunctive relief and damages."  Id.  The letter makes no mention of G.L.  The letter makes no mention of a negligence claim.  It does not allege that any of the putative Defendants acted negligently.  The only reference to any

_____

7, 8 to Am. Notice of Removal.  They have not been named as Defendants in subsequent amended pleadings.

emotional harm suffered by any Plaintiff is by T.L. as a result of SCS staff's alleged intentional and reckless infliction of emotional distress.

The December 28, 2012 tort claim notice letter fails to meet the requirements of formal notice under the OTCA for a negligence claim by G.L.  Although a tort claim notice need not identify particular claims by name, it still must provide a description of the time, place, and circumstances giving rise to the claim.  O.R.S. 30.275(4)(b).  Whether the content of the notice substantially complies with the statute is determined "with the object of the statute in mind[.]" Brown v. Portland Sch. Dist. No. 1, 291 Or. 77, 81, 628 P.2d 1183, 1186 (1981).  The allegations in the December 28, 2012 tort claim notice letter do not sufficiently apprise SCS that any claims would be brought by G.L. or that any of the alleged conduct was directed at G.L.  It makes no mention of any harm, distress, or damages allegedly suffered by G.L.  Because the purposes of the notice are to allow the public body to investigate the allegations and to settle meritorious claims without litigation, Flug v. Univ. of Or., 170 Or. App. 660, 13 P.3d 544, 551 (2000), aff'd, 335 Or. 540, 73 P.2d 917 (2003), allegations that fail to suggest that a particular party might assert a particular claim or that particular harms were suffered do not substantially comply with the notice requirement.  I agree with Defendants that the December 28, 2012 tort claim notice is insufficient as to a negligence claim by G.L. and I grant the motion to dismiss G.L's negligence claim.[4]

---

[4] Even if I consider the December 19, 2012 written complaint sent by Lowry to each member of the SCS School Board, Plaintiffs fail to show that notice was given as to a potential claim by G.L.  Ex. 5 to Am. Notice of Removal at 10-49.  First, the internal written complaint fails to indicate a claim for damages will be brought against Defendants by anyone.  Second, the only relevant reference to G.L. is a single complaint regarding the alleged unprofessional eye-rolling and name-calling by G.L's teacher, not a named Defendant in the current action.

B.  Failure to State a Claim

The precise nature of Plaintiffs' negligence claim is unclear in the Second Amended Complaint.  By referring to a "special duty" and by citing to O.R.S. 339.362(1), Plaintiffs appear to allege a statutory tort or a negligence claim based on a negligence *per se* theory.  However, in response to Defendants' citation to O.R.S. 339.364 which provides that "ORS 339.351 to 339.364 do not create any statutory cause of action[,]" Plaintiffs acknowledge that O.R.S. 339.362 does not create a statutory claim.  Pls.' Resp. Mem. at 17-18.  But, they assert that common law negligence remains a viable claim in light of the preceding sentence of O.R.S. 339.364 which states that "ORS 339.351 to 339.364 may not be interpreted to prevent a victim of harassment, intimidation or bullying or a victim of cyberbullying from seeking redress under ay other available law, whether civil or criminal."  O.R.S. 339.364.   I agree with Plaintiffs that  O.R.S. 339.364 precludes a statutory tort claim but does not preclude a common law negligence claim.

To state a common law negligence claim in Oregon, Plaintiffs must prove either that there existed "a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty," the breach of which is actionable, or that Defendants' conduct "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."  Fazzolari v. Portland Sch. Dist. No. 1J, 303 Or. 1, 17, 734 P.2d 1326, 1336 (1987).  Additionally, Oregon's "physical impact rule" requires a physical injury to support a claim for negligently inflicted emotional distress.  Hammond v. Central Lane Commc'ns Ctr., 312 Or. 17, 22-23, 816 P.2d 593, 596 (1991); see also Kahut v. J.P. Morgan Chase Bank, N.A., No. 06:12–cv–01769–TC, 2013 WL 1131059, at *1 (D. Or. Feb. 5, 2013) ("In Oregon a person cannot recover for the negligent infliction of emotional distress in the absence of a physical

injury"), adopted by J. Aiken (D. Or. Mar. 12, 2013).  Liability for emotional distress damages

based on a negligence theory alone is allowed in very limited circumstances.  Hammond, 312 Or.

at 22-23, 816 P.2d at 596.  One exception to the physical impact rule is where there is violation

of some duty over and above the duty to avoid foreseeable risk of harm, for example, a duty

arising from a special relationship.  See generally Id., 312 Or. at 22–23, 816 P.2d at 593

(describing liability for emotional distress caused intentionally or by violation of heightened duty

of care).

Here, Plaintiffs allege no physical harm and it is clear from their response to the motion

that they rely on the special relationship theory to support their negligence claim for emotional

and other non-physical damages.  As noted above in the discussion of the IIED claim, I conclude

that as a matter of law, Lowry has no special relationship with SCS.  Because he alleges no

physical injury and cannot rely on a special relationship, his negligence claim fails to state a

claim.

As to T.L, and as suggested above, determining whether a special relationship supports

the existence of a legally protected interest above and beyond "Fazzolari-like foreseeability,"

Curtis v. MRS Imaging Servs. II, 148 Or. App. 607, 617, 941 P.2d 602, 608 (1997), is a factual

inquiry.  Shin, 199 Or. App. 366, 111 P.3d at 777.  Given that T.L alleges that SCS owes her a

"special duty" and that the breach of that "special duty" caused her harm, T.L. has stated a

negligence claim.  However, the case law makes clear that to eventually sustain this claim, T.L.

will have to show that she enjoyed a special relationship with SCS, meaning that she will have to

show a "legal source that goes beyond the common-law duty to exercise reasonable care to

prevent foreseeable harm" and that the "legally identified interest so identified must be of

sufficient important to warrant the award of damages for emotional distress." Id. at 365, 111 P.3d at 770 (internal quotation marks omitted).

CONCLUSION

Defendants' motion to dismiss [23] is granted in part and denied in part as follows:  (1) the motion is granted as to Lowry's and Larson's section 1983 due process claims (Third Claim for Relief); (2) the motion directed to portions of the ADA and Rehabilitation Act claims is denied (Fourth and Fifth Claims for Relief); (3) the motion is granted as to Lowry's IIED claim (Sixth Claim for Relief); (4) the motion is granted as to the breach of contract claim (Seventh Claim for Relief); and (5) the motion is granted as to the negligence claims brought by Larson, Lowry, and G.L, but denied as to the negligence claim brought by T.L. (Eighth Claim for Relief).[5]

IT IS SO ORDERED.

Dated this ____6____ day of _____March_____, 2014

_____
Marco A. Hernandez
United States District Judge

_____

[5]  Remaining in the case are: (1) T.L.'s Title IX claim for peer-on-peer sexual harassment (First Claim for Relief); (2) all Plaintiffs' claims for Title IX retaliation (Second Claim for Relief); (3) T.L.'s section 1983 due process claim (Third Claim for Relief); (4) G.L.'s Rehabilitation Act and ADA claims in their entirety (Fourth and Fifth Claims for Relief); (5) T.L.'s IIED claim (Sixth Claim for Relief); and T.L.'s negligence claim (Eighth Claim for Relief).

32 - OPINION & ORDER